## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GEORGE HOLLIDAY, SR., #23993, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 15-cv-00290-MJR |
| SHERIFF LAKIN, ROBERT HERTZ, GARY BOST, DON MCNAUGHTON, TIM WALKER, MIKE TASSOME, DR. ROBERT BLANKENSHIP, SERGEANT DOVER, NURSE ALYSEA, and NURSE BOBBY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**REAGAN, Chief Judge:**

Plaintiff George Holliday, Sr., who is currently confined at Saline County Jail in Harrisburg, Illinois, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action occurred while Plaintiff was a pretrial detainee at Madison County Jail. (*See* Doc. 1). Plaintiff's principal complaint is that Defendants subjected him to inhumane conditions of confinement in violation of the Constitution.

### Merits Review Pursuant to 28 U.S.C. § 1915

Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

1

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At the same time, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). At this preliminary stage, the Court finds that Plaintiff's complaint passes threshold review.

## The Complaint

The events giving rise to this complaint occurred between December 2014 and March 2015 while Plaintiff was confined as a pretrial detainee at the Madison County Jail ("Jail"). (*See* Doc. 1).[1] Plaintiff's primary complaint is that during this time period he was exposed to various conditions that he asserts violated his constitutional rights.   On December 27, 2014, Plaintiff was directly exposed to large amounts of raw sewage when the sewer drains and toilets on his housing unit backed up causing human waste to flow into cells, including Plaintiff's, and the walkways of the housing unit. *Id*. at 11.  During the December 27, 2014 incident, Defendant McNaughton refused to give detainees cleaning supplies. *Id*. at 12.  Later, Defendant Dover was on the unit delivering meal trays when one of the detainees informed him that his toilet was backing up again right before the toilets and drains began overflowing again.  Defendant Dover did nothing to evacuate any of the detainees or to prevent them from being exposed to the human waste. *Id*. at 13.  Plaintiff asserts that the raw sewage was a few inches deep and that it took at least 15 minutes before Defendant Dover turned off the water. *Id*.  In addition, the unit was

---

[1] Shortly after filing his original complaint, Plaintiff filed a document (Doc. 7) that sought to supplement his original complaint in piecemeal fashion.  The Court construed this document as a motion to amend the complaint and denied the motion, explaining that the Court could not accept piecemeal amendments to the original complaint. (*See* Doc. 11).  The Court granted Plaintiff 21 days to file a proper First Amended Complaint.  Plaintiff failed to do so. Therefore, this threshold screening pertains only to the allegations made in Plaintiff's original complaint.

placed on lockdown.  When detainees asked Defendant Dover for help cleaning up the filth, Dover replied, "Ask the next shift."  *Id*.

On the next shift, Defendant Tassome was working.  Detainees asked him for help cleaning up the mess, but he also refused to offer any assistance or cleaning supplies.  *Id*.  In addition, the water remained turned off and detainees were denied drinking water, even those who had medication to take.  *Id*. at 14.  The fumes and filth caused Plaintiff to suffer vomiting and severe stomach cramping.  *Id.*  Moreover, the next day when Plaintiff was attempting to clean up his cell, he slipped on a pile of feces and hit his wrist on one of the cell bars.  *Id*. at 15. He went to see Defendant Nurse Alysea the next day.  She ordered x-rays on his wrist and told him that she would speak to the doctor about treatment for his exposure to the waste, but Plaintiff never received any treatment related to the sewage exposure.  *Id*.

On March 11, 2015, there was another sewage back up at the jail.  *Id*. at 16.  Plaintiff was not directly exposed to human waste that day because the back-up occurred on another unit. However, the fumes caused Plaintiff to vomit and suffer severe stomach cramping once again. *Id*.

Plaintiff maintains that all of the Defendants in supervisory positions had been informed about this ongoing problem, but refused to take steps to fix the sewer problem at Madison County Jail. *Id*. at 17.

In addition to the sewage problem, Plaintiff alleges that in February 2015 he tested positive for hepatitis C.  *Id*. at 20.  Following the test, Plaintiff was told by an employee of the public health department (who had conducted the test) that the medical staff at the jail would contact Plaintiff to follow-up on the test and provide treatment.  *Id*.  When Plaintiff never heard from the health care unit, he submitted a sick call slip and was seen by Nurse Bobby.  *Id*.

According to Plaintiff, when he asked for medication to treat the hepatitis C, Nurse Bobby told him "to get the hell out of her office."  *Id*.  Shortly thereafter, Plaintiff saw Defendant Bost, the jail superintendent, and asked him about getting the medication.  Defendant Bost responded, "You ain't going to get the treatment here" and walked away without offering any explanation. *Id*.

Plaintiff seeks monetary damages in the amount of $45 million.

### Legal Standard for Pretrial Detainees

"Incarcerated persons are entitled to confinement under humane conditions which provide for their 'basic human needs.'" *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).  Because Plaintiff is a pretrial detainee, his right to be confined under humane conditions is derived from the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment, which is applied to convicted inmates.  *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012)).  *See also Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008).

To state a claim challenging the conditions of confinement, a detainee must first allege that he has been subjected to adverse conditions that deny "the minimal civilized measure of life's necessities." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted); *Rice ex rel. Rice*, 675 F.3d at 664; *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)).  This analysis examines whether the conditions of confinement exceeded the contemporary bounds of decency of a mature civilized society.  *Id.*  Jail conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate constitutional norms.

4

*Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

In addition, a detainee must allege that defendants "purposely or knowingly" acted (or failed to act) or acted with criminal recklessness to create the conditions. *See Kingsley v. Hendrickson*, No. 14-6368, 2015 WL 2473447, at *6 (U.S. June 22, 2015).[2]

## Discussion

Plaintiff's complaint sets forth two counts (one regarding his exposure to raw sewage and the other regarding the lack of medical treatment he received following his hepatitis C diagnosis) and includes a lengthy narrative related to each count. However, except for mentioning in passing some of the Defendants by name, Plaintiff does not clearly designate which Defendants he intends to hold liable for which claims. To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to reorganize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has stated the following claims related to the conditions of his confinement:

**Count 1:** **Defendants Lakin, Hertz, Bost, McNaughton, Tassome, and Dover subjected Plaintiff to unsafe and unsanitary conditions of confinement in violation of**

---

[2] Following the United States Supreme Court's *Kingsley* decision, it is unclear whether a detainee challenging the conditions of his confinement must also allege that the defendant acted with a certain state of mind, namely maliciously and sadistically with the intent to cause harm, or whether an allegation that defendant's actions were objectively unreasonable will suffice. In *Kingsley*, the Court adopted an objective standard for pretrial detainees' excessive force claims, but did not explicitly state that this is the standard for conditions claims under the Fourteenth Amendment. Until this Court receives further guidance on the appropriate standard to be applied in these cases, the Court will allow claims that otherwise state a conditions of confinement claim under the Fourteenth Amendment to pass its threshold screening under 28 U.S.C. § 1915A(a).

**the Fourteenth Amendment when they failed to prevent and/or limit Plaintiff's exposure to raw sewage.**

**Count 2:        Defendant Nurse Alysea failed to provide Plaintiff medical care following his exposure to raw sewage in violation of the Fourteenth Amendment.**

**Count 3:        Defendants Nurse Bobby and Bost denied Plaintiff treatment for hepatitis C in violation of the Fourteenth Amendment.**

Plaintiff may proceed on Counts 1-3 against each Defendant named above, in their individual capacities only.

Under Count 1, Plaintiff discusses how Defendants McNaughton, Dover, and Tassome were personally involved in the alleged constitutional violation. In addition, he vaguely asserts that the sheriff, captains, and jail superintendent were made aware of the ongoing raw sewage problem, but failed to take action to address the problem. "The personal involvement of senior jail officials," such as Lakin (sheriff), Hertz (sheriff), and Bost (jail superintendent) can be inferred at this stage "where, as here, the plaintiff alleges 'potentially systemic,' as opposed to 'clearly localized,' constitutional violations." Smith v. Dart, No. 14-1169, 2015 WL 5656844, at *11 (7th Cir. Sept. 25, 2015). On the other hand, Plaintiff makes no mention of Defendants Walker or Blankenship in his statement regarding exposure to raw sewage. Both of these Defendants are listed as deputies. As such, the Court cannot infer personal involvement on their part, and there is nothing in the statement indicating how they were personally involved with this or any other claim. Therefore, Defendants Walker and Blankenship shall be dismissed from this case without prejudice.

Plaintiff also seeks to hold all of the named Defendants liable in their official capacities. An official capacity claim against jail officials may proceed if the constitutional deprivation was "undertaken pursuant to an official jail policy or widespread custom." *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008). In other words, a plaintiff must point to "an express policy

which caused the injury, a widespread practice that is so well-settled as to amount to a policy," or show that the official had the "final policymaking authority for the decisions" regarding jail conditions. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).  Here, under Count 1, Plaintiff has alleged that Defendants were aware of the unconstitutional conditions (namely, repeated sewer backups), but they failed to take appropriate steps to rectify the conditions.  That allegation is sufficient to put forth a municipal practice or custom for purposes of initial review. *See*, *e.g*., *Budd*, 711 F.3d at 843 (claim alleging that sheriff "creat[ed] conditions at the jail and permit[ed] them to persist" stated a "municipal practice or custom"); *Young v. Sheehan*, No. 98 C 6527, 2000 WL 288516, at *5 (N.D. Ill. Feb. 24, 2000) (allegations of "punitive conditions existing at Cook County Jail and inadequate conditions of confinement" were "sufficient to support the inference of an official county jail policy, practice, or custom").  Therefore, the Court will allow an official capacity claim on Count 1 to proceed against Defendant Lakin, who, as sheriff, is responsible for running the Jail. *See DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 (7th Cir. 2000) ("Illinois sheriffs have final policymaking authority over jail operations.").  All other official capacity claims are redundant because they are based on the same theory of liability.  Accordingly, the official capacity claims against all other Defendants shall be dismissed.

## Pending Motions

Plaintiff's motions for recruitment of counsel (Docs. 3 and 12) remain **PENDING** and shall be referred to United States Magistrate Judge Williams for a decision.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed on the following claims: **COUNT 1** against Defendants **LAKIN, HERTZ, BOST, MCNAUGHTON, TASSOME,** and

**DOVER**, in their individual capacities only; **COUNT 2** against Defendant **NURSE ALYSEA**, in her individual capacity only; and **COUNT 3** against Defendants **NURSE BOBBY** and **BOST**, in their individual capacities only.

Plaintiff may also proceed on **COUNT 1** against Defendant **LAKIN**, in his official capacity as Sheriff.

**IT IS FURTHER ORDERED** that Defendants **WALKER** and **BLAKENSHIP** are dismissed from this action without prejudice.

Finally, the Clerk of Court is **DIRECTED** to change the docket sheet to list Nurse Alysea and Nurse Bobby as individual Defendants and remove the designation of "Unknown Party."

The Clerk of Court shall prepare for Defendants **LAKIN, HERTZ, BOST, MCNAUGHTON, TASSOME, DOVER, NURSE ALYSEA,** and **NURSE BOBBY**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address

shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel (Docs. 3 and 12).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 2, 2015**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court